# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE

Assigned on Briefs January 16, 2013

## STATE OF TENNESSEE v. BOBBY LEE JOHNSON

**Appeal from the Criminal Court for Davidson County**

**No. 2011-I-1411; 2012-I-40        Mark J. Fishburn, Judge**

_____

**No. M2012-00787-CCA-R3-CD - Filed February 20, 2013**

_____

The appellant, Bobby Lee Johnson, pled guilty to one count of possession of morphine with intent to sell, a Class B felony; one count of driving under the influence, a Class A misdemeanor; and one count of aggravated burglary, a Class C felony. *See* Tenn. Code Ann. §§ 39-17-417, 55-10-401, 39-14-403. Following a sentencing hearing, appellant was sentenced to an effective sentence of eight years to be served in confinement. In this appeal as of right, appellant contends that the trial court erred by denying his request for alternative sentencing. We affirm the trial court's sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

PAUL G. SUMMERS, Sr.J., delivered the opinion of the court in which JOSEPH TIPTON, P.J., and JAMES CURWOOD WITT, Jr., J., joined.

Dawn Deanor, District Public Defender; Aisha McWeay, Assistant Public Defender (at guilty plea and sentencing hearing); and Emma Rae Tennant, Assistant Public Defender (on appeal), Nashville, Tennessee, for the Defendant-appellant, Bobby Lee Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Victor S. Johnson, III, District Attorney; Jeffrey D. Zentner, Assistant Attorney General; and Rob McGuire, Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION

### I.   *Facts and Procedural Background*

On November 16, 2011, appellant was pulled over on Interstate 40 for swerving in his lane of traffic and failing to wear a seat belt. The appellant was visibly intoxicated. When he was asked to step out of his vehicle, a small baggie with what appeared to be crack cocaine and a diazepam pill were found in the appellant's (driver's) seat. Upon

inspection, the glove-box of the vehicle contained seven (7) diazepam pills, forty-six (46) hydrocodone pills, eighteen (18) morphine capsules, twenty-six (26) morphine pills, sixteen (16) lorazepam pills, a spoon with white powdery residue and a syringe.

Appellant failed field sobriety tests and was placed under arrest for driving under the influence and possession of morphine with the intent to sell or deliver. At the time of his arrest, appellant was also driving on a suspended license and failed to show proof of insurance.

Approximately five days prior to his arrest for driving under the influence and possession of morphine with intent to sell or deliver, the residence of Angelene Moss, a 77-year-old woman confined to a wheel chair, was burglarized. Among the items taken were $125.00 in cash and prescriptions for oxycodone, morphine, diazepam and Provigil. On November 30, 2011, the appellant was interviewed by a police investigator and admitted to entering the home of Ms. Moss and taking the prescriptions.

The victim of the burglary, Ms. Moss, had previously taken the appellant into her home when Ms. Moss's son, Dr. Moss, attempted to help appellant by giving him work as a caregiver for Ms. Moss. After several instances of appellant's stealing prescriptions and other items from Ms. Moss, appellant was kicked out of the home. On the day of the burglary, appellant and his fiancee used a three-year-old child to distract the victim while appellant broke into the home to steal the drugs.

On January 26, 2012, appellant agreed to plead guilty to the charges of: (1) possession of morphine with intent to sell; (2) driving under the influence; and (3) aggravated burglary. Appellant agreed to a sentence of 8 years at 30% for the possession of morphine with intent to sell; 11 months and 29 days for driving under the influence; and 5 years at 30% for the aggravated burglary, all to be served concurrently for an effective sentence of 8 years at 30%. The sentencing hearing was set for February 29, 2012, to determine the manner in which the sentence would be served.

## II. Sentencing Hearing

At the sentencing hearing, appellant testified that he had been addicted to a variety of drugs for approximately 14 years. He claims his father was abusive and first introduced him to prescription drugs. The only family member he was close to was his mother, who had passed away. He has two brothers, one of whom is in prison. The other brother attempted to get appellant into a recovery program, but that brother was back to using drugs.

Appellant states that his substance abuse had affected every aspect of his life. He had made several attempts at recovery, none of which were successful for more than several months. In 2006 he lived in a halfway house for almost a year. He left the halfway house to move into his pregnant girlfriend's home in Dickson, Tennessee. Soon

after his daughter was born, he began using again and was quickly kicked out of the home by his daughter's mother. He had no relationship with his daughter and had not been able to provide any financial assistance to either his daughter or her mother.

The twenty-nine-year-old appellant dropped out of the ninth grade and had only held a handful of jobs for a few months at a time. During the time he was incarcerated and awaiting sentencing, he was given the opportunity to take classes for his GED exam. He stopped taking the classes after he suffered from "colds and depression." While his original testimony was not accurate on the issue, appellant had previously been charged with probation violations on at least three different occasions and had an additional pending probation violation at the time of the sentencing hearing.

Appellant thinks that drug court will give him the structure that he needs in order to have a successful program of recovery. Other than the halfway house, he has sought treatment on his own approximately six times. His efforts to seek treatment never went beyond putting his name on a waiting list at different facilities.

In order to pay for drugs and basic necessities, appellant claimed that he found heroin and similar drugs for other people and takes a small fee of cash or drugs in return. He owned a late model vehicle and is unable to explain the source of the funds used to purchase the vehicle.

At the time of the sentencing hearing, appellant claimed that he had a hold from Dickson County for "failing to meet financing and court costs." He claimed that he had only been on probation one time.

The pre-sentence report and later admissions by appellant established that appellant had been on probation numerous times and was unable to complete a single probation period without violating his probation. At the time of the sentencing hearing, there was at least one pending and several prior probation violations.

In determining whether the appellant should be sentenced to community corrections, the court considered: the evidence presented at the sentencing hearing; the presentence report; the victim statement; sentencing principles embodied in Tenn. Code Ann. § 30-35-103; arguments made as to alternative sentencing; the nature and characteristics of the criminal conduct involved; enhancing and mitigating factors; the appellant's own testimony; the potential for rehabilitation and treatment; and the general purpose for which the Sentencing Reform Act in Tenn. Code Ann. § 40-35-102 was enacted.

In examining the enhancement factors, the court found that the appellant was the leader in a commission of an offense involving two or more criminal actors by appellant's use of an adult accomplice and an innocent three-year-old child in order to commit the burglary. The court found the use of a three-year-old particularly egregious. The court

also found that the victim of the crime was particularly vulnerable.  In its reasoning, the court stated:

> According to the records, she [the victim] was 77-years old, wheelchair-bound... [due to a] very serious and debilitating disease, which is exacerbated by the fact that she took him into her home because of her strong belief in recovery programs and help for those in need.…  Mr. Johnson (appellant) was able to take advantage of her benevolence, as well as her age and physical disabilities in order to get what he was looking for.

The only mitigating factor the court found was that appellant's conduct neither caused nor threatened serious bodily injury.

In its reasoning, the court looked at a variety of factors to determine the appellant's ability to successfully complete an alternative sentence while not imposing a threat to the community.  These included the appellant's work and educational history, which the court found "deplorable."  The court also considered appellant's character and social history, which it found "deplorable."

In looking at the community support available to the appellant, the court found that appellant could not have asked for more support than he received from Dr. Moss and his (Dr. Moss's) mother, but "he blew that one off the map."  While the appellant talked about getting the support of a drug court program, the court stated "the problem is that he's trashed it every time he had the support of the community, he trashed it, basically thrown it back in their face and taken advantage of them."

The court examined appellant's compliance with court ordered programs and found a history of probation violations.  The court also found the appellant to be lacking in candor.  While he attempted to claim to be a small-time drug dealer only dealing to satisfy his own drug needs, when confronted about his car the appellant acknowledged that he was selling more than just what was necessary to meet his own habit.

The court found the appellant to be a "miserable failure" at providing for the financial or emotional needs of his daughter.  The court also noted the availability of rehabilitative programs to appellant over the years, which appellant failed to utilize.  The few attempts that he did make at recovery were all failures.

The court recognized that incarceration is primarily intended for felons who commit the most severe offenses.  While burglary on its face does not appear to be the most severe offense, the court stated:

[I]t's the circumstances around which these occurred, using another drug addict and that drug addict's three-year-old daughter to hoodwink your way into the house of a 77-year-old, wheelchair-bound benevolent individual... in the eyes of the court, that makes that a rather egregious offense.

The court found the continuing nature of the drug offenses and violations of conditions of probation show that appellant has anything but regard for the morals and laws of society.

The court recognized that the sentence imposed should be the least severe measure to achieve the purpose for which it is being imposed. The appellant was found to be eligible for alternative sentencing, but denied alternative sentencing because the court found that confinement was necessary to avoid depreciating the seriousness of the offense as well as the unusual and egregious circumstances in this case. The court noted that measures less restrictive have frequently been applied unsuccessfully; and, therefore, the appellant was sentenced to serve the eight years in confinement.

### III.   Law and Analysis

Our Supreme Court recently clarified that a trial court's decision to grant or deny alternative sentencing is reviewed on appeal using an "abuse of discretion standard, accompanied by a presumption of reasonableness." *State v. Caudle*, --- S.W.3d ---, No. M2010-01172-SC-R11-CD, 2012 WL 5907374, at *5 (Tenn. Nov. 27, 2012). As such, this Court may not disturb a sentence, even if a different result were preferred, so long as the sentence was within the appropriate statutory range and the purposes and principles of the Criminal Sentencing Reform Act of 1989 "have been properly addressed" by the trial court. *State v. Susan Renee Bise,* 380 S.W.3d 682 (Tenn., 2012).

The purposes of the Criminal Sentencing Reform Act include "the imposition of a sentence justly deserved in relation to the seriousness of the offense"; "the prevention of crime and promotion of respect for the law"; "providing an effective general deterrent to those likely to violate the criminal laws of this State"; restraining individuals with a "lengthy history of criminal conduct"; and encouraging effective rehabilitation of defendants when "reasonably feasible." Tenn. Code Ann. § 40-35-102. On appeal, the burden is on the appellant to show that the sentence is improper. *See* Tenn. Code Ann. § 40-35-401(d) Sentencing Commission Comments.

In determining a defendant's suitability for alternative sentencing, the trial court should consider the following principles:

(A)  Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103; *State v. Boston*, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Community Corrections Act establishes certain minimum requirements in order to be considered an eligible person for the Act. *See*, *e.g.*, Tenn. Code Ann. §§ 40-36-103(1); 40-36-106(a)(1)(A)-(F), (2). Simply because an offender meets the minimum requirements under the Community Corrections Act "does not mean that he is entitled to be sentenced under the Act as a matter of law or right."  *State v. Bell*, 973 S.W.2d 288, 294 (Tenn. Crim. App.1998)(citing *State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App.1987)). Instead, the Act's criteria "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." Tenn. Code Ann. § 40-36-106(d).

The court found that appellant did meet the minimum requirements for community corrections. Although appellant may have met the minimum requirements, the court did a detailed analysis of all the factors it considered in denying alternative sentencing.  There were numerous enhancement factors, including: (1) repeated inability to abide by previous sentences less restrictive than confinement; (2) confinement was necessary to avoid depreciating the seriousness of the offense; (3) the unusual and egregious circumstances of the crime; (4) the lack of candor of the appellant; (5) appellant's "deplorable"  social, work and family history;  and (6 ) a long criminal history which shows a lack of regard for the laws and morals of society.

In sum, the trial court followed the sentencing law in Tennessee; explained his rationale; used appropriate principles; and adjudged a very appropriate sentence of eight years' confinement.

*IV. Conclusion*

In consideration of the foregoing and the record as a whole, the trial court is affirmed.


_____
PAUL G. SUMMERS, Senior Judge